UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No. 11cr127 (AWT) |
| | : | |
| v. | : | |
| | : | |
| DAVID BOURQUE | : | February 7, 2012 |

**GOVERNMENT'S THIRD SENTENCING MEMORANDUM**

## I. Introduction

On July 21, 2011, the defendant pleaded guilty to receiving and distributing child pornography in violation of 18 U.S.C. § 2252A(a)(2). The United States Probation Office calculated the defendant's conduct at a level of 40. Subtracting three levels for acceptance of responsibility, pursuant to Guidelines § 3E1.1, results in a total offense level of 37.[1] With a Criminal History Category of I, the defendant is exposed to a term of incarceration of 210-240 months, which is the same sentencing range stipulated to by the parties in the plea agreement. Sentencing is scheduled for February 10, 2012.

## II. Discussion

The defendant filed a memo asking for a downward departure under § 5K2.13 and a non-Guideline sentence pursuant to 18 U.S.C. §3553(a). Under §3553(a) the Court should consider the nature and circumstances of the offense and the history and characteristics of the defendant when imposing sentence. In response to the defendant's arguments and to describe the relevant §3553(a) factors, the government memo includes (1) a description of the defendant's child

---

[1] At sentencing, because the defendant has assisted authorities by timely notifying the Government of his intention to plead guilty, the Government intends to make an oral motion that the Court award the third point for acceptance of responsibility under U.S.S.G. § 3E1.1(b).

pornography collection; (2) the defendant's purposeful attempts to evade detection by law enforcement during the commission of his crime; (3) the manner in which the defendant solicited pictures and movies; (4) a discussion of the defendant's claim that other individuals placed "unsolicited" images on his computer; and (5) an assessment of whether the defendant suffered from a reduced mental capacity that caused him to download child pornography. Additionally, because the government anticipates that the Court may inquire about the applicability of the enhancement for the use of a computer, the memo will explain why this enhancement was correctly applied by the probation officer.

 **(1) The Defendant Assembled an Enormous and Horrific Collection of Child Pornography**

In this case, the defendant amassed an enormous collection of horrific child pornography. The possession and viewing of these videos and pictures victimized their subjects. The defendant perpetuated their suffering by distributing this material and allowing other individuals to acquire the pictures of the abuse suffered by these children.

The Supreme Court has consistently recognized that the protection of children is a paramount governmental and societal interest and the permanent record of abuse created by child pornography creates a pervasive harm that revictimizes a child. *See New York v. Ferber*, 458 U.S. 747, 757 (1982) ( "the prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance."). Indeed, well before the widespread circulation and increase of child pornography as a result of the Internet, the Supreme Court recognized:

> [P]ornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography. Additionally, once an image is placed on the Internet, it can never be removed and becomes a permanent record of the abuse inflicted upon that child. Each and every time such an image is viewed, traded, printed, or downloaded, the child in that image is re-victimized. Moreover, the images continue to circulate as the child becomes an adult and hopefully begins a path towards recovery from the crimes inflicted upon them. The physical and psychological harm to children depicted in these images is incalculable, and the continual circulation of images harms children in a manner comparable to the actual production of the images. This harm is compounded and continued when child pornography images are recirculated for the personal viewing pleasure of additional offenders.

*New York v. Ferber*, 458 U.S. 747, 759-60 & n.10 (1982).

This defendant possessed a panoply of child pornography; pictures, videos and stories. Investigators found 22,282 images and 4059 videos of child pornography on the hidden portion of his computer's hard drive.[2] Some of these videos exceeded five minutes in length. Under the Guidelines, the defendant's collection equates to 328,582 images. This is a staggering amount of child pornography, even by today's standards. The state police officer who reviewed the content of the defendant's computer indicated that the defendant's collection was worse than the usual offender and that the defendant possessed the single worst video that he had ever seen in the two and a half years that he has been conducting child pornography investigations. The FBI case agent reported that the defendant's collection is among the larger ones found in the district.

---

[2]The investigator indicated that he found a total of 5443 videos on the computer, 4059 of which were child pornography and 1384 of which contained child erotica and nudism.

When a prospective trading partner first viewed the defendant's online account, he saw five folders: A Peek, Pics Folders, Vids, Vids 2 and Vids 3. Only the folder named "A Peek" was accessible. That folder contained non-pornographic images of young boys, some in various states of undress. The other folders containing the pornographic material could only be accessed if the defendant provided the individual with a password. The defendant made available the following images available to his trading partners:

 a. File Name: !1!!!11.jpg. Description: This image file depicts a male child who appears to be between the ages of 1 and 3 years old. The penis of what appears to be an adult male is inserted into the male child's anus.

 b. File Name: 001m-013_2.jpg. Description: This image file depicts a male child who appears to be between the ages of 3 and 6 years old. The child is naked from below the waist, and the penis of what appears to be an adult male is pressed against the child's anus.

 c. File Name: xxxxx_13_yo_008.jpg. Description: This image file depicts a naked male child who appears to be between the ages of 11 and 14 years old. The child is kneeling on a bed, and his legs are spread, exposing his penis in a lascivious manner.

 d. File Name: img.20030116021957172688826lg.jpeg that depicts a child that appears to be less than a year old performing oral sex on an adult male. This image was stored in a folder labeled "photos - babies - men."

Videos, however, were the mainstay of the defendant's collection. The defendant possessed over 4000 pornographic videos depicting the sexual abuse of children, some of which were incredibly horrific.³ These included:

 File Name: toddler boy - 2yo masturbated.avi. This video file is 2 minutes and 54 seconds in length and depicts a naked male child who appears to be between the ages of 3

---

³Descriptions of additional videos found on the defendant's computer are contained in the Second Addendum to the PSR. Further, the investigator indicated that the defendant's computer contained numerous video file of boys masturbating.

4

and 5 years old. The child is lying on a bed in the supine position, and an unknown individual is masturbating the child's penis. The camera also focuses on the child's penis.

 File Name: Two kids sucking big prick.mpg. This video file is 45 seconds in length and depicts two naked male children who appear to be between the ages of 6 and 9 years old. Both children perform oral sex on an adult male's penis.

 File Name: PJK001A3.mpg. This video file is 9 seconds in length and depicts a naked male child who appears to be between 8 and 11 years old. The penis from an unknown male is inserted into the child's anus, and they are engaged in anal sex.

 File Name: Preteen 7Yo Little Boy Rides Biiiig Dick.mpg. This video file is 11 seconds in length and depicts a naked male child who appears to be between the ages of 7 and 10 years old. The penis of an adult male is inserted into the child's anus, and they are engaged in anal sex.

 File Name: Little Boy xxxx With Man 1.mpg. This video file is 5 minutes and 32 seconds in length and depicts a naked male child who appears to be between the ages of 7 and 10 years old. The male child can be seen masturbating the penis of an adult male. He also inserts the adult male's penis into his mouth and perform oral sex on the adult male.

 In addition to the pictures and videos, the defendant possessed seventeen text files that contained stories of children being molested. Forensic analysis also uncovered two .pdf versions of "Modern Boy Lover Magazine," and one .pdf file entitled "The Penis," which was a copy of an old email that began, "Here are some basics that the boy in your life would like you to know."

 Young boys were focus of the defendant's interest. His chat logs with his trading partners are replete with requests for images of boys under the age of fourteen. Common responses by the defendant when asked by prospective trading partners about his interests were "boys under 14" or "boys < 14." The defendant asked one individual if he (the individual) would be interested in "a nice 11-12 year old?" Further, the following online discussion occurred between the defendant and trading partner 1 (TP1).

| | |
|---|---|
| TP1: | Waht [sic] do u like |
| Defendant: | boys under 14 |
| | you must have more to be invited here |
| TP1: | what do u mean |
| Defendant: | min 25 gig . . . . or new material[4] |
| TP1: | how do you expect anyone []to grow their files if you only share with people who have that much, a lot of my stuf [sic] is original records that I do myself.[5] |
| Defendant: | thats why then....enjoy. Where is original stuff. |

### (2) The Defendant Actively Sought to Avoid Detection By Law Enforcement

Rather than suffering from diminished mental capacity, this is a case where the defendant knew he was committing a crime and actively sought to avoid detection by law enforcement. First, at the suggestion of another individual with whom he traded child pornography, the defendant installed sophisticated encryption software on his portable external hard drive specifically to safeguard his child pornography. PSR ¶ 41. His computer hard drive contained a password protecting the main section that contained files related to his duties as a police officer. On the same hard drive, however, the defendant created a hidden partition that contained tens of thousands of child pornography files. This section could be accessed only with a different password and the defendant believed

---

[4] According to the investigator, this comment indicates that the defendant was trading in a location that required participants to have at least 25 gigabytes of material available for trading or possessed new material that was recently produced and had not yet been widely disseminated online.

[5] According to the investigator, this is a reference by TP1 that he produces his own child pornography for trading, i.e. that he produces new material.

that computer analysis would not reveal the presence of the hidden partition.[6] The defendant's password for the hidden volume was, in part, "keepmesafeIWO1P@SSword." According to the investigator, this password is a phonetic representation of the phrase "Keep me safe, I want only one password."

Typically when a file is accessed, information about the date and time of access is stored on the computer. In this case, however, the defendant employed a program that erased any record of the files that he accessed. He now claims that he did not access some of the pornographic material stored on his computer. Given the sheer number of files in his possession, that may well be true. But we will never know the answer in light of the wiping program installed by the defendant. Given that the defendant took deliberate steps to obliterate this information, his claim that he did not view some of the files surely can not be used to mitigate his crime. Regardless, it is uncontested that the defendant made these files available to his trading partners to be downloaded, viewed, shared and redistributed.

---

[6]Indeed, the instructions for using the program employed by the defendant state the following:

> Even when the outer volume is mounted, it should be impossible to prove whether there is a hidden volume within it or not*, because free space on *any* volume is always filled with random data when the volume is created and no part of the (dismounted) hidden volume can be distinguished from random data.
>
> The password for the hidden volume must be substantially different from the password for the outer volume. To the outer volume, (before creating the hidden volume within it) you should copy some sensitive-looking files that you actually do NOT want to hide. These files will be there for anyone who would force you to hand over the password. You will reveal only the password for the outer volume, not for the hidden one. Files that really are sensitive will be stored on the hidden volume.

In addition to attempting to employ sophisticated electronic security to safeguard his collection of child pornography, the defendant used information gained as a police officer to assess the ability of other law enforcement officers to detect his criminal activity. First, he conducted child pornography investigations and was familiar with law enforcement techniques. Incredibly, the defendant was actually investigating a child pornography case while he was simultaneously collecting child pornography during his time off. See PSR ¶ 32. Second, in January, 2011, the defendant attended a law enforcement conference in his capacity as the captain in the Granby police department. At this conference, the FBI gave a presentation to state law enforcement supervisors about its current efforts to stop the spread of child pornography. The speaker discussed law enforcement's ability to infiltrate various platforms used by pedophiles, including the one the defendant had been using for about six months. After the presentation, the defendant approached the FBI agent who gave the presentation and asked questions about the platform and the issues the FBI was having in infiltrating it. See PSR ¶ 20. Apparently satisfied that he was safe from detection by law enforcement, the defendant continued to use this platform to collect child pornography until he was arrested.

It is also apparent from the defendant's online chats with his trading partners that he actively sought to avoid detection by law enforcement.

[...]

| | |
|---|---|
| Defendant to Trading Partner (TP2): | (the defendant transmitted the password required to access his online collection of child pornography) Then transfer immediate. |
| | Bye bye. |
| TP2 to Defendant: | lol, you're transferred. |

| | |
|---|---|
| Defendant to TP2: | k......just never know. |
| TP2 to Defendant: | thanks for giving my [sic] like 14 seconds to see if u were legit, lol.<br>Yep, Where are you from? |
| Defendant to TP2: | <u>14 seconds to get my ip and get a knock on door</u>.<br>(Emphasis added) |
| TP2 to Defendant:<br>so I | I've never had someone's files load as fast as yours,<br>So I was just curious.<br>Yep, I know.<br> I'm cautious too.<br>Just gotta trust contacts who recommend, I guess. |
| Defendant to TP2:<br>[...] | Ya.... till one f---- up. |

Further, the defendant warned another trading partner about the online presence of law enforcement.

| | |
|---|---|
| TP3 to Defendant: | Your invitation has been accepted. |
| Defendant to TP3: | Ya, ok . . . but I see DL (meaning download),<br>then see nothing and [it] looks very suspicious . . .<br><u>one file DL by a cop and bye bye.</u><br><u>And yes they (meaning law enforcement) can DL</u><br><u>to verify that you have CP (child pornography)</u>.<br>(Emphasis added) |
| TP3 to Defendant: | I gotcha sorry about that.<br>Yea I always make sure people have CP before I give out my pass. |
[...]

### (3) The Defendant Assembled his Collection in a Manner that Displayed an Indifference to Child Victims

During the course of trading hard core pornographic material, the defendant

displayed a callous disregard for the harm suffered by the children depicted in the videos

and pictures he viewed and traded. Often, after he vetted and accepted a new trading partner, he would tell his trading partner to "enjoy" himself or to "have fun" while perusing the defendant's collection. For example:

| | |
|---|---|
| Defendant to TP2: | wish to find a nice 11-12 year old?<br>Good selection of stuff.<br>How often u on? |
| TP2 to Defendant: | it really depends<br>I don't live alone so I can't keep up and running when I'm not here<br>but try to get on every few days<br>Usually it's in spurts. On a lot for a couple of days, then maybe not on for a week |
| Defendant to TP2: | k.... well enjoy. |

On another occasion, a prospective trading partner told the defendant that he (the new partner) had "more than 100GB boy." The defendant replied "ya, me too" and later in the conversation told his new trading partner that he had "105 gig." They exchanged passwords and the defendant said "k...<u>enjoy</u>. On and off at times, so be patient and <u>we both enjoy</u>." (Emphasis added). As noted above, the collection that the defendant wanted to his trading partner to "enjoy" included horrific videos of violent acts against young children.

Indeed, it is apparent that the defendant actively sought out, viewed, and collected videos depicting the rape of young boys. Later in the chat with TP2 discussed above, the following exchange occurred:

| | |
|---|---|
| TP2 to Defendant: | are you into anything with boys |
| Defendant to TP2: | yep |
| TP2 to Defendant: | what all? |
| Defendant to TP2 | if under 14..I'm game |
| TP2 to Defendant: | like bondage and stuff |
| Defendant to TP2: | ya |
| TP2 to Defendant: | hot |
| Defendant to TP2: | ya<br>I agree |
| TP2 to Defendant: | have any real bondage//torture//rape type pics?<br>Or vids |
| Defendant to TP2: | couple...older thou |
| TP2 to Defendant: | yeah, it seems like its either fake or old. I think I really only have a couple of real rape ones, one from russia and 1 or 2 arab, nothing american.<br>And all the bondage torture is fake. |
| Defendant to TP2: | ya the arab one...and old ones..nothing new. Most fake and older than 18. [...] |

[...]

| | |
|---|---|
| Defendant to TP2: | DL a rape one now...see if it's a new one in about a minute |
| TP2 to Defendant: | let me know :-) /o002<br>brb |
| Defendant to TP2: | k....old one [gives a name] |
| TP2 to Defendant: | how'd that rape vid turn out? |
| Defendant to TP2: | old... [lists name again]<br>sucks when the names are off |
| TP2 to Defendant: | nuts |

[...]

The investigator discovered several videos depicting the rape of children on the defendant's hard drive that are described in the PSR and which will not be described further in this memo.

### (4) There is No Evidence that Others Placed Unsolicited Child Pornography on the Defendant's Computer Without His Knowledge

The defendant repeatedly claims at various places in his brief that others deposited "unsolicited" child pornography on his computer without his knowledge. See, e.g. Def's

11

Brief at 1, 2, and 18. The government does not have any evidence to support this statement. The file sharing program used by the defendant does have a setting that would allow the account owner (i.e. the defendant) to allow others to upload files directly to the owner's computer. This, however, is not the default setting and must be activated by the account owner. When activated, a specific icon appears adjacent to the account owner's files.

While communicating in an undercover capacity with the defendant, law enforcement officers never observed the icon that would indicate that others could upload to the defendant's account without his permission. Prior to the execution of the search warrant, the FBI and the state police accessed the defendant's computer on three occasions; twice to download suspected child pornography and once to document his file structure.[7] Simply put, the officers never saw any indication that the defendant had selected the option that would allow others to upload files to his computer without his permission.

For example on April 10, 2011, the FBI accessed the defendant's account to document his file structure. The agent reports that when accessing the defendant's account, five folders were visible: A Peek, Pic Folders, Vids, Vids2, and Vids3. As noted above, the four latter folders required a password to be accessed. The agent did not see the icon associated with folders that have been designated by the defendant to accept uploads from other users without the defendant's knowledge. Further, the agent observed the

---

[7]Officers were able to observe the defendant's account when he was online on or about March 11, 2011, March 21, 2011 and April 10, 2011.

notation "Read Only" next to all five folders. This is further indication that individuals who accessed the folders could only "read" or view the files. Stated differently, if the defendant had designated these folders as capable of receiving uploads, they would contain the designation "Read/Write." The agent created a video, approximately 24 minutes in length, that documents his mapping of the defendant's files on April 10, 2011.[8]

The government respectfully submits that the defendant has resorted to this argument in an attempt to distance himself from the terrible vidoes found on his computer depicting the rape of children. The defendant's chat logs, however, plainly reveal that he knowingly downloaded rape videos. As noted above, the defendant told a trading partner that he was "DL a rape one now...see if it's a new one in about a minute." He then told his partner the video was "old" and that it "sucks" when the (file) names are incorrect. The defendant's interest in acquiring and viewing this material is undeniable.

### (5) There is Insufficient Evidence that the Defendant Suffered From a Reduced Mental Capacity that Contributed to His Crime

In his brief the defendant argues that he viewed child pornography in part because of a diminished mental capacity at the time of the offense. Def's Brief at 7. Plainly, given the two different reports submitted to the Court, there is a difference of opinion. The clinical psychologist hired by the defendant concluded that the defendant has a mental illness that led to a significantly reduced mental capacity that contributed to the

---

[8]. The Court is welcome to view all or part of the video if it wishes. Since the video does contain some child erotica images, the Government would request to play it for the Court in chambers. Further, should the Court wish to view any of the evidence in this case, the FBI can make that available *in camera* as well.

downloading of child pornography. The psychiatric examination conducted by the medical doctor retained by the Court indicated that the defendant's mental conditions do not result in a significantly reduced mental capacity in regard to the crime. The court-appointed psychiatrist concluded that the defendant's occupation was, in fact, a self-esteem enhancing factor and has been a positive influence in his mental functioning. Indeed, the defendant's own words support this conclusion. He plainly was successful at his job, even arguing that he "was so good at his job that until his arrest he was in line for the chief's job in Granby." Def's brief at 3; see also PSR ¶ 87. The court-appointed psychiatrist reports both that the defendant's attempt to link his crime with the demands of his job represents a defensive rationalization, and that these issues are unrelated to the defendant's involvement in child pornography.

The defendant's argument that the Court should disregard the independent psychiatric exam in favor of the opinion rendered by his own clinical psychologist because the latter individual spent more time with the defendant is unpersuasive. Quantity does not necessarily beget quality. At best, there is a split of opinion that results in no solid basis for the Court to conclude that the defendant committed this crime while suffering from a significantly reduced mental capacity.

**(6) The Enhancement for Use of a Computer Should Apply in this Case**

In prior cases before this Court involving the possession of child pornography, the issue of the applicability of the enhancement under § 2G2.2(b)(6) has been discussed. Often, in possession cases, the Court has declined to apply it. The enhancement applies in this case for at least four reasons. First, this is a distribution case. Unlike a possession

case, where the computer may serve merely as a storage device, i.e. a container, in this case the defendant actively used his computer to send and receive child pornography. But for the computer, the defendant could not have received or transmitted the volume of material involved. Second, the computer was also an essential tool for the defendant to communicate with his trading partners. He used it to talk about his interests, assess prospective trading partners, and warn others about the activities of law enforcement. Third, the defendant used the computer to recruit new trading partners to the platform he used to trade child pornography. In late 2010, the defendant sent emails to two different individuals asking them to "join and share," essentially inviting them to join his preferred trading platform so they could trade child pornography with him. Fourth, the computer allowed the defendant to use a sophisticated encryption technology to prevent law enforcement from finding the child pornography, which was secreted on a hidden partition of the defendant's external hard drive.

Against this backdrop, the use of the computer enhanced the defendant's ability to collect and trade child pornography and Guidelines § 2G2.2(b)(6) applies.

### III. Conclusion

The defendant amassed an enormous collection of photographs and videos that document and memorialize the sexual abuse of children. All are extremely disturbing; some are especially horrific. Contrary to his recent claims, the defendant did not commit this crime with a diminished mental capacity. The government respectfully requests that

the Court impose a fair and just sentence considering the facts in this case as described in all of the filings by the government.

>Respectfully submitted,
>
>DAVID B. FEIN
>UNITED STATES ATTORNEY
>
>/s
>
>RAY MILLER
>ASSISTANT UNITED STATES ATTORNEY
>FEDERAL BAR NO. CT 20451
>157 CHURCH STREET, 23RD FLOOR
>NEW HAVEN, CT 06510
>(203) 821-3700

## CERTIFICATE OF SERVICE

This is to certify that on February 7, 2012, a copy of the foregoing Memorandum was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail on anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

>/s
>
>Ray Miller
>Assistant U.S. Attorney