UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - x
                                 :
UNITED STATES OF AMERICA         :  No. 3:11CR127(AWT)
                                 :
          vs.                    :
                                 :
DAVID L. BOURQUE                 :
                                 :  HARTFORD, CONNECTICUT
               Defendant         :  FEBRUARY 10, 2012
                                 :
- - - - - - - - - - - - - - - - x


EXCERPT OF SENTENCING HEARING


     BEFORE:

          **HON. ALVIN W. THOMPSON, CHIEF U.S.D.J.**



APPEARANCES:


     FOR THE GOVERNMENT:

          OFFICE OF THE UNITED STATES ATTORNEY
               157 Church Street, 23rd Floor
               New Haven, Connecticut 06510
          BY:  RAYMOND F. MILLER, AUSA


     FOR THE DEFENDANT:

          BROWN, PAINDIRIS & SCOTT
               2252 Main Street
               Glastonbury, Connecticut 06033
          BY:  RICHARD R. BROWN, ESQ.



                              Diana Huntington, RDR, CRR
                              Official Court Reporter

1                    *       *       *       *       *

2              THE COURT:  Before imposing sentence, I do want

3       to explain the factors that a district court must take

4       into consideration in determining the sentence to be

5       imposed in a particular case.

6              Under Title 18 U.S.C. Section 3553, the factors

7       applicable in this case that are to be considered by a

8       court in imposing sentence are as follows:

9                    1) the nature and circumstances of the offense

10      and the history and characteristics of the defendant;

11                   2) the need for the sentence imposed to serve

12      the various purposes of a criminal sentence, which I will

13      discuss in a moment;

14                   3) the kinds of sentences available;

15                   4) the kinds of sentence and the sentencing

16      range established for the defendant's category of offense

17      committed by someone with his criminal history category

18      under the Sentencing Guidelines;

19                   5) any pertinent policy statement issued by the

20      Sentencing Commission; and if I depart in determining the

21      range suggested by the Sentencing Guidelines, I am

22      required to state my reasons in open court;

23                   6) the need to avoid unwarranted sentence

24      disparities among defendants with similar records who have

25      been found guilty of similar conduct; and

1            7) the need to provide restitution to any

2    victims of the offense.

3            I have taken into account and thought about each

4    of these factors, and I'm going to explain to you,

5    Mr. Bourque, how I've reached a decision as to what I

6    believe is the appropriate sentence in your case.

7            First of all, I have reviewed the Presentence

8    Report prepared by the Probation Office.

9            I did get sentencing memoranda from the defense

10   and from the government.

11           As you know, I got reports from Dr. Lothstein

12   and Dr. Borden.

13           I received character letters from your friends

14   and family members.  And remarks were made by your friend

15   and your daughter who spoke today.

16           I've also gone back and looked at other cases

17   involving child pornography where I imposed sentence with

18   a particular focus on those I've imposed sentence on since

19   the Dorvee decision.

20           I've considered your counsel's remarks today as

21   well as your remarks and the remarks of counsel for the

22   government.

23           As you know, I did receive a motion from the

24   government on your behalf.

25           I've also taken into account the need for the

1    sentence in this case to serve the various purposes of a

2    criminal sentence.  Pursuant to 3553, the sentence should

3    be sufficient but not greater than necessary to serve

4    these purposes.

5              First, I must consider the need for the sentence

6    imposed to provide just punishment for the offense.  Part

7    of the meaning of a just punishment is that it not be

8    unduly different from sentences received by defendants

9    with similar records who have been convicted of similar

10   conduct.

11             Second, I need to consider whether there is a

12   need for the sentence imposed to protect the public from

13   further crimes committed by you.

14             Third, I must consider the need for the sentence

15   imposed to afford adequate deterrence to criminal conduct.

16             Fourth, I must consider the need for the

17   sentence imposed to reflect the seriousness of the offense

18   and to promote respect for the law.

19             Finally, I must also consider the need for the

20   sentence imposed to serve the goal of rehabilitation by

21   considering whether there is a need to provide you with

22   educational or vocational training, medical care or other

23   correctional treatment in the most effective manner.

24             In your case, I am particularly aware of the

25   need to impose a sentence that provides for just

1  punishment, the need to deter others from committing the

2  offense committed by you, and the need for the sentence

3  imposed to reflect the serious nature of the offense.

4        Another factor that must be considered is the

5  Sentencing Guidelines under Section 3553 of Title 18 of

6  the United States Code.  As we've been discussing here

7  today, a key provision of the Guidelines is Section 2G2.2.

8        In United States vs. Dorvee, which is

9  604 F.3d 84, the court stated that Guidelines

10  Section 2G2.2 must be applied with great care.  There are

11  several aspects of this section that I've analyzed in

12  considering this provision of the Guidelines in connection

13  with your sentencing.

14        In assessing of the appropriateness of the

15  provisions in Section 2G2.2, I have also reviewed my

16  analysis in four child pornography cases in which I've

17  imposed sentences since the Dorvee decision.  In one case

18  I imposed a sentence of three months because I felt the

19  offense conduct was well outside the heartland cases.  In

20  other cases I imposed sentences in the range of 36 months

21  to 46 months.  In each case I imposed a non-Guidelines

22  sentence because certain of the enhancements in

23  Section 2G2.2 were not appropriate for a variety of

24  reasons.  Each of these cases involved possession of child

25  pornography, not receipt and distribution of child

1   pornography, for which the statutory maximum and the

2   Guidelines range are higher.  This case is well outside

3   the heartland of the cases involving first-time offenders

4   who have been convicted of receipt and distribution of

5   child pornography, but outside the heartland because it

6   involves conduct that is much more serious conduct and

7   involves a much higher degree of culpability.

8           In Dorvee, the court noted the frequency with

9   which certain Section 2G2.2 enhancements are applied.  The

10  fact that an enhancement applies in a high percentage of

11  cases does not necessarily mean that the enhancement

12  should not be applied in a particular case.  Rather, I

13  believe what I have to do is determine whether the

14  enhancement is appropriate for the case under

15  consideration.  Also, I note that the fact that several of

16  these enhancements apply in the vast majority of cases may

17  be a reflection of a decision by investigators and

18  prosecutors to pursue in federal court the most serious

19  cases.  I note that the child pornography cases I have had

20  are in this respect unlike the drug conspiracy cases.  In

21  the drug cases, there's typically a range of defendants in

22  terms of their culpability because the nature of the

23  investigation is such that the investigators typically

24  start with a low-level offender and pursue information

25  that leads them to more serious offenders.

1          One thing I found helpful to do in thinking

2     about your case was to consider the impact of the

3     amendments to the Sentencing Guidelines that have come

4     into effect after November 1, 2000.  And I considered what

5     your Guidelines range would have been had you been

6     sentenced under the version of the Guidelines that became

7     effective on November 1, 2000; what is different now in

8     terms of the Guidelines calculation; and whether the

9     different result is appropriate in your case even if the

10    method by which that result is obtained can be

11    characterized as questionable, which is what I think the

12    court in Dorvee has done.  The November 1, 2000 version of

13    the Guidelines predated two significant changes to

14    Section 2G2.2 which flowed from directives from Congress,

15    which is one of the principal criticisms of this section.

16         Had you been sentenced under the November 1,

17    2000 Guidelines, by my calculation your total offense

18    level would have been 27 as opposed to 37.  This would

19    have been determined as follows:  A base offense level of

20    17; a two-level increase for material involving a

21    prepubescent minor or minor under the age of 12; a

22    five-level increase for distribution for receipt of a

23    thing of value but not for pecuniary gain; a four-level

24    increase for material that portrays sadistic or

25    masochistic conduct or any depictions of violence; a

1    two-level increase for use of a computer; and a

2    three-level decrease for acceptance of responsibility.

3         The two changes that result in you having a

4    total offense level of 37 are the 2003 amendments to the

5    Guidelines that added, in your case, five offense levels

6    for the number of images and the 2004 amendment to the

7    Guidelines that increased the base offense level for

8    receipt and distribution from 17 to 22.

9         I have considered the appropriateness of the

10   enhancements that would have applied had you been

11   sentenced under the 2000 version of the Guidelines, and

12   I've also considered the appropriateness of the increase

13   in your Guidelines range that results from the 2003 and

14   2004 amendments.

15        First, the enhancement for the prepubescent

16   minor or minor under the age of 12.

17        The two-level enhancement under 2G2.2(b)(2) is

18   appropriate here.  This is one of the frequently applied

19   enhancements.  It is applied in approximately 95 percent

20   of cases.  This enhancement has been part of the

21   Guidelines since November 1987.  The Commission invited

22   comments on it in 1988, at which time it added

23   prepubescent minors to a provision that covered minors

24   under the age of 12.  This provision distinguishes

25   defendants who seek images of very young minors from

1    offenders who seek images of teenagers and older minors,

2    i.e., minors who are close to or over the legal age of

3    consent.  Thus it serves as an appropriate indicator of

4    the serious nature of the defendant's conduct.  Here, in

5    your own words, which are quoted in the Presentence Report

6    and in the government's memorandum, you reflect your

7    interest in young boys.

8              There's also an enhancement for distribution.

9              The November 1, 2000 version of Section 2G2.2

10   includes a five-level increase for distribution for

11   receipt of a thing of value but not for pecuniary gain.  I

12   know that your attorney disagrees with this provision, but

13   I find the Sentencing Commission's analysis more

14   persuasive.  That provision was new to that version of the

15   Guidelines, but it replaced a provision that became

16   effective in 1996 which had provided for an increase by

17   the number of levels corresponding to the retail value of

18   the material but in no event less than five levels.  So it

19   would have been at least five levels.  The provision added

20   in the amendment effective November 1, 2000 takes what I

21   view as a logical approach which results in an increase

22   that can range from two levels to seven levels depending

23   on the particular offense conduct, thus giving

24   individualized consideration to defendants.  This change

25   was made in response to the Sexual Predators Act, but to

1   me the change seems reasonable and proportionate.

2          Also, Section 2G2.2(b)(4) provides for a

3   four-level increase if the offense involves material that

4   portrays sadistic or masochistic conduct or other

5   depictions of violence.  The Commission adopted this

6   four-level enhancement after public comment, without

7   Congressional direction, with respect to the Guideline for

8   receipt and trafficking in 1990.  I note that the addition

9   of this enhancement to the possession guideline, on the

10  other hand, was made later as part of the PROTECT Act in

11  2003.  Thus, the *History of the Child Pornography*

12  *Guidelines* notes that the enhancement was added to

13  Section 2G2.4 in 2003 but that it was already a part of

14  2G2.2.  This reflects the fact that the two guidelines had

15  not at that time been merged as they are today.

16         This provision distinguishes offenders who seek

17  images of minors who may or may not be prepubescent or

18  under the age of 12 that depict sadistic or masochistic

19  conduct or other depictions of violence from offenders

20  who, while they seek child pornography, do not seek these

21  types of images.  This enhancement recognizes that the

22  conduct of offenders who possess this type of material is

23  significantly more serious than the offense conduct of

24  defendants who possess other types of child pornography.

25  And having sentenced people in both categories, I find

1    that distinction helpful.

2            Here your conduct falls squarely within the type

3    of conduct this enhancement was designed to capture.  Your

4    collection included videos depicting the rape of young

5    boys, which are described in the second addendum to the

6    Presentence Report, and not just babies, just so the

7    record is clear.  Furthermore, it is apparent that the

8    inclusion of such videos in your collection was the result

9    of you actively seeking out and collecting such videos.

10   The conversation reported in the government's sentencing

11   memorandum clearly demonstrates this fact.

12           Also included in that offense level of 27 is use

13   of a computer.

14           Section 2G2.2(b)(6) contains a two-level

15   increase for the use of a computer.  In some cases an

16   enhancement for the number of images involved in the

17   offense will be completely overlapping with the

18   enhancement for use of a computer.  For example, in the

19   case of a defendant who is only able to receive and/or

20   distribute the number of images acquired because a

21   computer was being used in the commission of the offense,

22   the use of a computer adds nothing to his degree of

23   culpability or the harm to victims.  In such a situation,

24   increasing the sentence based on this enhancement is the

25   practical equivalent of double counting.  There are case,

however, because of the particular use to which a computer was put, because of the number of images involved, or for other reasons, that would not be the case.

In analyzing whether this enhancement is appropriate in a particular case, I find it helpful to look at the history of the provision.  In the Sentencing Commission's 1996 report to Congress, the Commission noted, and I'm quoting, "The legislative history of [Sex Crimes Against Children Prevention Act of 1995] indicates that Congress had identified four concerns:  (1) wide dissemination and instantaneous transmission of computer-assisted trafficking of child pornography, (2) the increased difficulty of investigation and prosecution by law enforcement officials, (3) the increased likelihood that child pornography will be viewed by and harm children, and (4) the potential for pedophiles to lure children into sexual relationships through the computer." And I'm quoting from the June 1996 report to Congress. The first and second points are ones that I think are pertinent here.

I have concluded that the enhancement for use of a computer is appropriate here based on two factors even if we do not consider, for this purpose, the very large number of images.  One, the computer was more than just the means by which you were able to receive and distribute

1    such a large amount of child pornography.  You used the

2    computer to recruit new trading partners, as described in

3    the government's sentencing memorandum, and assess

4    perspective trading partners and warn trading partners

5    about the activities of law enforcement authorities.  Two,

6    by using a computer, you were able to implement a

7    sophisticated encryption technology to prevent law

8    enforcement from finding the child pornography that had

9    been stored on a hidden partition on your external hard

10   drive.

11          That brings me to the changes since the

12   November 1, 2000 version of the Guidelines.

13          As I mentioned, the Guidelines -- well, I

14   haven't mentioned this.  The Guidelines were amended

15   effective April 30, 2003 in response to the PROTECT Act to

16   add an enhancement based on the number of images.  This

17   enhancement was added for both possession and receipt and

18   distribution cases.  As I noted earlier, the enhancement

19   for sadistic or masochistic conduct or the depiction of

20   violence was also added at that time for possession cases,

21   but this enhancement had previously been in place for

22   receipt and distribution cases.

23          In 2004, Section 2G2.2 was revised to increase

24   the base offense level from 17 to 22.  In the *History of*

25   *the Child Pornography Guidelines*, the Commission discussed

1   the process by which it selected a base offense level of

2   22 for trafficking and distribution offenders.  And that's

3   discussed at pages 44 to 48 of that study.  The starting

4   point of the process for the Commission was implementation

5   of the 5-year mandatory minimum sentence for trafficking

6   and receipt, and the increase in the statutory maximum

7   from 15 years to 20 years for trafficking and receipt.

8   There is also an increase in the statutory maximum for

9   possession from 5 years to 10 years.  The Commission

10  points out that it adopted the most lenient of four

11  options available to it in arriving at a base offense

12  level of 18 for possession offenders, and the Commission

13  noted that setting the base offense level at 22 permitted

14  the Guidelines and the enhancements to act in conjunction

15  with the statutory mandatory minimum, and the Commission

16  also had taken into account proportionality in coming to a

17  base offense level of 22 for receipt and distribution

18  offenses.

19          So that brings us to the enhancement for the

20  number of images.

21          Section 2G2.2(b)(7) sets forth an enhancement

22  based on the number of images.  The enhancement can be

23  two, three, four, or five levels, depending on the number

24  of images possessed.  This is a common methodology using

25  the Guidelines where quantity is often used as a way of

1    measuring the degree of seriousness of the criminal

2    conduct and/or harm to the victims or society, both of

3    which are indicators of the degree of a defendant's

4    culpability.

5            Here, your guidelines calculations include a

6    five-level increase for 600 or more images.  You had

7    22,282 images plus 4,059 videos of child pornography on

8    the hidden portion of your computer's hard drive.  In the

9    Sentencing Commission study dated October 2009 it

10   discusses the approach taken by the Commission in

11   determining that a video should be considered to contain

12   75 images.  That approach is consistent with the way in

13   which the Sentencing Commission customarily operates.

14   Under the Sentencing Guidelines then, your collection

15   equates to 325,582 images.  However, even if one were to

16   count one video as just one image, 4,059 videos is so far

17   beyond 600 images as to make this case extraordinary.

18   Also, 22,282 images is so far beyond 600 images as to make

19   this case extraordinary.  Thus, by any means of

20   measurement, you collected an extraordinary amount of

21   child pornography.  If anything, a five-level increase

22   does not sufficiently take into account the number of

23   images involved in this offense.

24           So when I compare the earlier version of the

25   Guidelines to the current version of the Guidelines,

1  having concluded that there was more than ample

2  justification for the computation as of 2000, the question

3  that I've considered for this particular case is whether a

4  ten-level increase in total offense level and, more

5  importantly, the increase in the Guidelines range that

6  accompanies it is appropriate in this particular case.

7  While in many instances the enhancement for number of

8  images will overlap with the enhancement for use of a

9  computer, here entirely different sets of facts justify

10  those two enhancements.  Those two enhancements are

11  appropriate here based on sets of facts that do not

12  overlap.  For reasons discussed above, the two-level

13  increase for use of a computer is quite appropriate in

14  this case, entirely aside from the fact that the number of

15  images involved is so large.  With respect to the number

16  of images involved, as I mentioned earlier, you collected

17  an extraordinary amount of child pornography.

18        Now, the number of images that triggers an

19  increase in the offense level could quite properly be

20  questioned in terms of the structure of this provision of

21  the Guidelines, but I think it's clear that an increase of

22  five levels actually seems a bit low for someone in this

23  situation if we even simply look at the fact that, as

24  reflected in the government's sentencing memorandum,

25  there's a quote that says, "I require a minimum of 25

1 || gig," which I think is 25 gigabytes.

2 ||          Now, the other component of the increase in the

3 || recommended range that results because of the changes

4 || after 2000 is the increase in the base offense level from

5 || 17 to 22.  I think there's room for argument about the

6 || appropriateness of that both ways, but it's really not

7 || material to my analysis in this case, because assuming

8 || that there's overlap with respect to the five-level

9 || increase in the base offense level of 17 to 22, I conclude

10 || that a significant increase in the exposure here is

11 || appropriate for a combination of reasons that are not

12 || already reflected in the Guidelines calculation.  In

13 || particular, I conclude that there are three aggravating

14 || factors present here that cannot be related to any

15 || particular Guidelines provision and, thus, are

16 || non-Guidelines factors and constitute the basis for a

17 || non-Guidelines sentence in this case.

18 ||          First, you not only actively sought to avoid

19 || detection, for example, by using a "wiping" program and

20 || actively monitoring new users, but you also used knowledge

21 || you obtained as a law enforcement officer who had and was

22 || at the time of the commission of the offense investigating

23 || these offenses to help you avoid detection and, because

24 || you were working with others to avoid detection, you, in

25 || effect, conveyed information to other individuals as to

1    how to avoid detection as well.

2            Second, as a law enforcement officer who had

3    investigated these offenses, you, more than the average

4    citizen and more than the typical offender, had an

5    exposure to the horrific consequences for the long-lasting

6    physical and psychological harm to the children depicted

7    in these images, which the United States Supreme Court has

8    quite properly referred to as incalculable.  And I think

9    anybody who has been involved in these cases, even if you

10   haven't had to view the images and simply have to read the

11   descriptions of them, is all too conscious of that.

12           And third, among the most significant

13   aggravating factors here is the following.  In

14   January 2011, when you attended a Law Enforcement

15   Executive Development Seminar where an FBI agent gave a

16   presentation to state law enforcement supervisors about

17   the FBI's current efforts to stop the spread of child

18   pornography, the speaker discussed law enforcement's

19   ability to infiltrate platforms used by pedophiles,

20   including the one you had been using.  After the

21   presentation, you approached the FBI agent who gave the

22   presentation and asked questions about the platform and

23   the issues that the FBI was having in infiltrating it.  It

24   really is nothing short of outrageous for law enforcement

25   agents who are gathering to discuss the best strategies

1    and means for combating the spread of child pornography to

2    have to be concerned about whether one of their number is

3    using that information to avoid detection.

4          Thus, I conclude that a significant increase

5    above both the Offense Level 27 and the Offense Level 32

6    and, more accurately, the sentencing ranges that accompany

7    them is appropriate in this case.

8          I do want to address an additional -- or two

9    additional issues.  One is the issue of diminished

10   capacity.  I'm not going to go into the reports that were

11   filed by the two doctors, but I will say that I am not

12   satisfied that Dr. Lothstein has established a nexus

13   between the commission of the offense and the conditions

14   that he identifies.  That's my own common sense reading of

15   the report.  It also happens to be Dr. Borden's

16   professional reading of the report.

17         I do credit Dr. Borden's report.  I know that

18   there's been an argument made that he didn't spend as much

19   time, he didn't do as many tests.  Having been involved in

20   assessing situations myself, I note that you can reach a

21   point where you know enough to come to a sound conclusion.

22         Having read the report, there are a few

23   conclusions I have.  Without quoting from the report, I

24   will say that I have throughout this process and continue

25   to believe that it's hard for me to assess this defendant

1    because of a lack of openness.  I do believe it's accurate

2    to describe him as superficially cooperative and also a

3    person who is not a fully credible historian.

4              The last point I do want to address is the

5    government's motion.  I am going to grant the government's

6    motion.  I think he has provided assistance to the

7    government.  I have, in assessing how much weight to put

8    on this motion, considered what actually happened here and

9    I've also considered how, in this context, this kind of a

10   motion operates as opposed to how it operates in other

11   kinds of cases.

12             So based on all the foregoing and after review

13   of all of the factors set forth in Title 18 U.S.C.

14   Section 3553, I have concluded that, for the circumstances

15   of this case, a non-Guidelines sentence as opposed to a

16   Guidelines sentence is most appropriate.

17             Would you please stand, Mr. Bourque.

18             Mr. Bourque, I hereby sentence you to the

19   custody of the Bureau of Prisons for a period of 120

20   months.

21             I'm recommending that you be designated to a

22   facility where you will be able to receive treatment for

23   the medical condition that is referred to in Paragraph 72

24   of the Presentence Report.

25             After imprisonment, you shall be placed on

1    supervised release for a period of ten years.

2              A condition of your supervised release will be

3    that you not commit another federal, state, or local crime

4    during the term of supervision.  As a further condition of

5    your supervised release, you shall not possess a

6    controlled substance.  In addition, you shall refrain from

7    any unlawful use of a controlled substance and submit to a

8    drug test within 15 days of your release on supervised

9    release and at least two periodic drug tests thereafter

10   for use of a controlled substance.  A further condition is

11   that you shall register under and comply with the

12   conditions of the Sex Offender Registration and

13   Notification Act.  A further condition is that you shall

14   cooperate in the collection of a sample of your DNA.

15             There are special conditions of your supervised

16   release which shall be as follows.  They are the ones from

17   the plea agreement and they are lengthy, so I'm going to

18   ask you to be seated for this.

19             1)  You shall participate in mental health

20   treatment with an emphasis on sexual offender treatment,

21   either inpatient or outpatient, to include participation

22   with polygraph administration, as approved by the United

23   States Probation Office.  You shall pay all or a portion

24   of the cost associated with mental health treatment based

25   on your ability to pay, in an amount to be determined by

1    the United States Probation Office.

2         2)   You shall agree that any device you use with

3    internet access, including a computer, will be equipped

4    with monitoring software that will permit the United

5    States Probation Office to determine whether you have been

6    in contact with minors, either through e-mail, chat rooms,

7    instant messaging, or any other electronic means.  You

8    shall pay all, or a portion of, the costs associated with

9    computer monitoring based on your ability to pay, in an

10   amount to be determined by the United States Probation

11   Office.

12        3)   You shall consent to third-party disclosure

13   to any employer, potential employer, community service

14   site, or other interested party, as determined by the

15   United States Probation Office, of any computer-related

16   restrictions that are imposed.

17        4)   You shall have no unsupervised contact with

18   any children under 18 years of age without the express

19   permission of the United States Probation Office and

20   treatment provider.

21        Actually, I do have a question for counsel about

22   upon release.  I think the defendant's children are above

23   the age, they're not minors.  But are there grandchildren?

24        MR. MILLER:  I'm not aware.

25        THE COURT:  So I think if that comes up, that

1  could be addressed at that time.

2      5)  You shall permit the United States Probation

3  Office, accompanied by either local, state, or federal law

4  enforcement authorities, upon reasonable suspicion, to

5  conduct a search of your residence, automobile, and

6  workplace for the presence of sexually explicit materials

7  involving minors.

8      6)  You shall comply with any applicable

9  federal, state, and local sex offender registry laws and

10  requirements.

11      7)  You shall provide the United States

12  Probation Office with access to any requested financial

13  records, including but not limited to, telephone bills and

14  credit card statements.

15      8)  You shall not loiter around playgrounds,

16  schools, arcades, or any other places where children under

17  the age of 18 congregate.  You shall not associate with or

18  have contact with convicted sex offenders or those

19  considered inappropriate by the United States Probation

20  Office because of a connection to sexual abuse of minors

21  or sexually explicit materials involving minors, unless as

22  part of an approved counseling group.

23      9)  You are prohibited from holding any position

24  of authority or guidance over children or youth groups

25  involving individuals under the age of 18.

1            10)   You are prohibited from accessing or

2    possessing sexually explicit materials involving minors.

3            Of course, all of the standard conditions of

4    supervised release in this district shall also apply in

5    your case.  Those conditions will be set forth in the

6    judgment in this case.

7            If you violate any of these conditions during

8    your period of supervised release, the Court will be free

9    to sentence you to additional time in prison of up to two

10   years.

11           So, in effect, you have a sentence of up to two

12   years in prison hanging over your head during the period

13   that you're on supervised release.  The consequences of a

14   failure to comply with the conditions of supervised

15   release are extremely serious.  The Court would not

16   hesitate to sentence you to additional time in prison if

17   you violated the terms of your supervised release.  Do you

18   understand that, sir?

19           THE DEFENDANT:  Yes, Your Honor.

20           THE COURT:  Thank you.

21           The Court hereby directs that the Probation

22   Office provide the defendant with a written statement that

23   sets forth all of the conditions of the defendant's

24   supervised release.  The statement shall be sufficiently

25   clear and specific so that it may serve as a guide for the

 1   defendant's conduct.

 2          Mr. Bourque, I'm not ordering you to pay a fine

 3   because you to not have the ability to pay one.

 4          As I mentioned earlier, restitution is not

 5   something that we have to act on in this case.

 6          However, you shall pay a mandatory special

 7   assessment of $100 which is due and payable immediately.

 8          I also note that the preliminary order of

 9   forfeiture filed on February 9, 2012 and relating to the

10   Dell Inspirion laptop, the Dell Latitude laptop, the

11   Western Digital hard drive, the Seagate hard drive, and

12   the Kingston SD card shall become final as to you pursuant

13   to Fed. R. Crim. P. 32.2(b)(4) and is imposed as part of

14   the sentence in this case and will be included in the

15   judgment.

16          The judgment will be prepared for my signature

17   by the Clerk's Office.

18          Mr. Bourque, I want to make sure that you

19   understand that you or the government have the right to

20   appeal, within 14 days, any sentence that the Court

21   imposes.  If you cannot afford to pay for the cost of an

22   appeal, the Court will allow you to appeal and to use the

23   services of an attorney at no cost to you.  Do you

24   understand that, sir?

25          THE DEFENDANT:  Yes, Your Honor.

 1            THE COURT:  Can I mention one thing to counsel

 2   so it doesn't come as a surprise?

 3                 (Sidebar discussion off the record.)

 4

 5                 *     *     *     *     *

 6                 (End of excerpt requested.)

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                         C E R T I F I C A T E

4

5

6

7              I, Diana Huntington, RDR, CRR, Official Court

8    Reporter for the United States District Court for the

9    District of Connecticut, do hereby certify that the

10   foregoing pages are a true and accurate transcription of

11   my shorthand notes taken in the aforementioned matter to

12   the best of my skill and ability.

13

14

15

16
                   /s/_____
17
                        DIANA HUNTINGTON, RDR, CRR
18                        Official Court Reporter
                       450 Main Street, Room #225
19                     Hartford, Connecticut 06103
                           (860) 547-0580
20

21

22

23

24

25